UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY, et al,<br><br>Defendant. | CASE NO. C10-5625 RBL<br><br>ORDER |

THIS MATTER is before the Court on Plaintiff Evanston Insurance Company's Motion for Summary Judgment [Dkt. #39] and Clark County's Cross Motion for Summary Judgment [Dkt. #43]. This is a declaratory judgment action involving insurance coverage for claims against the County.

The underlying Complaint [Dkt. #40, Ex.1] alleges that the County and its medical provider, Wexford Health Services, Inc., were negligent and that that negligence led to the suicide of a man named Vuong Quang Tran. Evanston provided an insurance policy to its named insured, Wexford, for both general liability (CGL) and professional liability. The County was an additional insured under the general liability part, but not the professional liability part of the Evanston policy. Evanston seeks summary judgment on the ground that the derivative claims

against the County for Wexford's conduct involve "professional services" and are therefore not covered under the Evanston policy. Clark County seeks a ruling as a matter of law that the Evanston policy does provide coverage for the claims asserted against it in the underlying action, and that Evanston owes the County duties of defense and indemnity.

For the following reasons the Motions are GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Clark County retained Wexford Health Services to provide comprehensive medical care for inmates at the County jail. Under the County-Wexford contract, Wexford furnished medical providers to the county, including doctors, physician's assistants, mental health specialists, and nurses. These medical providers performed medical services such as mental health evaluations, prescribing psychotropic medicines, and establishing suicide prevention policies for County inmates.

In September 2008, Vuong Quang Tran was arrested for poisoning his neighbor's Koi pond with household cleaners. He was sent to the Clark County jail. On October 2, 2009, Tran was placed on suicide watch because he stated he wanted to kill himself. Two weeks later, Tran posted bail and was released from County jail.

On March 10, 2009 a judge ordered Tran to undergo a competency restoration evaluation and treatment at Western State Hospital. He was booked into jail for transport, but became agitated and punched a wall and caused property damage to the clinic. At about the same time, a Wexford mental health counselor forwarded to Western State Hospital a medical screening form about Tran. The counselor failed to check the boxes for "suicidal ideation" or "property destruction." On the 12th of March, Tran was cited for a criminal misdemeanor for damage to

the clinic wall, and booked into jail. He was later sentenced[1] to a 30-day lockdown for the damage to the clinic wall.

On March 18, Tran was transported to Western State Hospital in Tacoma for a 90-day competency evaluation. In early June 2009, Tran was transported back to the jail. Western State Hospital personnel faxed a treatment summary warning that Tran was suicidal, but the Wexford mental health counselor allegedly did not file this form in Tran's medical records, or tell County or Wexford personnel that Tran was a suicide risk. Without that information, the County placed Tran in a segregated cell not used for suicidal inmates. The next day the Wexford nurse saw Tran for a health assessment update. She noted Tran had mental health issues but did not mention suicidal ideation. Two days later the Wexford physician's assistant evaluated Tran and found "no acute problems at this time" and discontinued psychotropic medication for migraines and insomnia. Wexford's physician/medical director approved the treatment plan prepared by the physician's assistant.

On June 11, 2009, Western State Hospital faxed to the Wexford mental health counselor its psychological assessment. Again, Western State Hospital personnel warned of serious suicide risks, noting that Tran had attempted to commit suicide in 2008. He had "very serious and planned suicide attempts" and "frequently mentioned wanting to die." The counselor failed to file this form in Tran's records or notify County or Wexford personnel that Tran was a suicide risk.

On June 16, a Wexford nurse practitioner (using an interpreter on the phone) performed a mental health screening on Tran. She concluded that he had no past or present suicidal ideation.

---

[1] It is not clear from the parties' filings who imposed this "sentence," or whether it followed a trial and conviction. In any event, the allegation apparently comes from the underlying Complaint.

She diagnosed him with schizophrenia and depression with psychotic features. She increased his antipsychotic medication and told the County that Tran had begun to stabilize.

On June 17, Tran refused his hour out of his cell and refused to go to the jail medical office for his daily glucose monitoring for his diabetes. The next day the jail officer saw Tran pacing in his cell. Four hours later, a second officer saw him lying on his bunk in his cell. That officer told another inmate to wake up Tran for his daily glucose monitoring. The inmate got no response when he shook Tran's cell door. An hour later the officer took Tran his dinner but Tran was non-responsive. His cell door was opened and Tran was found dead, lying in a fetal position on his bed.

On June 19, 2009, the medical examiner found more than twice as many Prozac tablets in Tran's medications as were prescribed by Wexford's pharmacy. Tran's estate sued the County, Wexford and their respective employees for deprivation of civil rights resulting in his death.

The motions before the Court turn on whether the conduct of Wexford personnel described in the complaint alleges "professional negligence" as opposed to what amounts, more broadly, as "administrative negligence."

The County is an additional insured under Wexford's comprehensive general liability policy, which excludes claims "arising out of the rendering of or failure to render professional services by the insured." Wexford also has a policy for professional liability, but the County is not an additional insured on that policy. Evanston argues that it has no duty to defend or indemnify the County in the Tran matter because all of the allegations against the County arise from Wexford's professional negligence (excluded from policy) or the County's own conduct. The County describes Wexford's negligence as "administrative" in nature and argues that these claims are covered by (and not excluded under) the Evanston CGL policy.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Insurance Policy Interpretation

Clark County concedes it is not an additional insured under the Evanston policy covering Wexford for professional liability. Its additional insured status is therefore wholly dependent on its meeting the requirements of the Evanston policy's bodily injury liability coverage endorsement. Under this endorsement, the County is an additional insured for liability for bodily injury caused by Wexford's negligence, if those claims are not otherwise excluded by the policy. The bodily injury liability coverage specifically excludes any bodily injury claim "based upon or arising out of the rendering of or failure to render professional services by [Wexford]."

"Professional Services" is defined in the policy as "those services described in Item 4 of the Declarations." In Item 4 of the Declarations the description of "professional services" is limited to "Correctional Medical Services," with no explanation.

Insurance policies must be construed in favor of the insured and strictly against the insurance carrier. *Shotwell v. Transamerica Title*, 91 Wn.2d 161 (1978). "The language must be construed so as to give the insured the protection to which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in his favor." *Phil Shroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 69 (1983).

The interpretation of an insurance policy is a question of law. *Overton v. Consolidated Ins.,* 145 Wn.2d 417, 423 (2002). Insurance policies are contracts which are construed as a whole with the terms interpreted in the way that would be understood by an average person purchasing insurance. *Id*. If the language is clear and unambiguous, the court must enforce it as written and may not create ambiguity where none exists. *Am. Nat'l Fire Ins. v. B&L Trucking & Constr. Co*., 134 Wn.2d 413, 419 (1998).

Determining whether insurance coverage exists is a two-step process. *McDonald v. State Farm Fire & Cas.,* 119 Wn.2d 724, 727 (1992). The insured must first demonstrate that "the loss falls within the scope of the policy's insured losses." *Id.* To avoid coverage, the insurer must then show that the loss is excluded by specific policy language. *Id.* at 728. In Washington, the duty to defend is broader than the duty to indemnity. *Hayden v. Mutual of Enumclaw Ins.,* 147 Wn.2d 751 (2000). A duty to defend exists where the complaint against the insured, construed liberally, alleges facts which could impose liability upon the insured within the policy's coverage. *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d 751 (2002). The duty to

defend is not, however, limitless. *E-Z Loader v. Travelers Ins.,* 106 Wn.2d 901, 910 (1986) ("We decline to impose on an insurer coverage of a liability not set forth in the policy"). The duty to indemnify, unlike the duty to defend, turns on whether the facts of the underlying matter are actually covered. *American Best Foods v. Alea London*, 168 Wn.2d 398 (2010).

The county argues that four of the allegations in the underlying Complaint [Dkt. #40, Ex.1] are administrative, non professional services, which are covered under the CGL portion of Evanston's Policy:

1. Wexford employee Rita Laurent "fail[ed] to enter and/or request a CCJ custody staff enter Tran on the Superior Court docket." [¶ 38.a]

2. Wexford staff "fail[ed] to notify CCJ custody staff that Tran was a suicide risk." [¶ 41.f]

3. Wexford staff "fail[ed] to file the Western State Treatment Summary in Tran's medical record." [¶ 38.3]

4. Wexford "fail[ed] to develop and maintain an administrative and operational polic[y] manual." [¶ 30.a].

The Complaint also alleges that the "specific services that Wexford agreed to provide at the Clark County jail" included:

   i) Implementation of suicide prevention procedures to be followed by health care staff; and

   j) Providing interpreter services for non-English speaking detainees.

[¶ 6]

Finally, the underlying Complaint alleges the County is liable for ratifying Wexford's grossly negligent provision of services "with regard to Tran's serious medical and mental health needs." [¶ 66]

The Ninth Circuit, interpreting Washington law, has adopted the definition of *Marx v. Hartford Accident & Indem. Com.,* 183 Neb. 12, 14, 157 N.W.2d 870 (1968) to interpret the meaning of "professional services" in an insurance policy: A "professional" act or service is one

arising out a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved in predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself. *Bank of California, N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981). Medical treatment is a professional service and hence not covered by virtue of the exclusion. *See Harad v. Aetna Casualty and Surety Co.,* 839 F.2d 979, 984 (3d Cir. 1988).

The common sense definition of "professional services," in the context of this case, includes all activities performed by medical personnel directed at the treatment of the patient, Vuong Quang Tran, whether or not they are negligent. The failure to mark boxes in a medical form as part of communicating a diagnosis or concern about a patient constitutes "medical services" and therefore "professional services." When a Wexford nurse practitioner used an interpreter on the phone to assess a patient's condition, she was performing professional services. The diagnosis, charting and communicating with personnel who are medical (or non-medical) are all medical services which are vital to the mission of taking care of a patient. They are professional services within the scope of the Exclusion and are not covered under the CGL policy.

The allegations in paragraph 30 of the underlying Complaint relate to policies generally, and not directed at any particular patient. These policies are administrative in nature and are not within the definitions of "medical services" or "professional services." The activities are not within the exclusion and therefore are covered under the CGL policy. Evanston has a duty to defend and indemnify the County with respect to those allegations that address broad policies dealing with issues of organization and operational procedures. Evanston does not have a duty to

defend or indemnify the County regarding the activities described in the Complaint performed by health care providers with respect to the patient, Tran.

### III. CONCLUSION

For these reasons, Evanston's Motion [Dkt. #39] is GRANTED IN PART AND DENIED IN PART and the County's Cross Motion [Dkt. #43] is GRANTED IN PART AND DENIED IN PART, as is indicated in this opinion.

Dated this 14th day of November, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE