HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EVANSTON INSURANCE COMPANY, an Illinois corporation,

Plaintiff,

v.

CLARK COUNTY, et al.,

Defendants.

CASE NO. 10-cv-5625 RBL

ORDER

Clark County moves to compel Evanston Insurance to pay $90,164, as provided by their settlement agreement. (Def.'s Mot. to Compel at 1, Dkt. #94.) In response, Evanston argues that the agreement is unenforceable because the parties lacked a "meeting of the minds," or in the alternative, if the agreement is to be enforced, it should include a release of claims. (Pl.'s Resp. at 2, Dkt. #99.) Because the Court finds that the parties entered a binding agreement, the motion to compel is granted.

**I.   BACKGROUND**

This case arises from the tragic death of Vuong Quang Tran, a troubled man with mental illness. (*See* Pl.'s Mot. Summ. J. at 2, Dkt. #39.) Tran had been arrested for poisoning his neighbor's koi pond and was detained in Clark County jail. *Id.* at 2, 7. Despite strong

indications that Mr. Tran should have been on suicide watch, he was not effectively monitored and succeeded in taking his own life. *Id.* at 9.

After Tran's death, his family and estate brought negligence claims against Clark County and its medical provider, Wexford Health Services, which provides healthcare to Clark County's inmates. The County and Wexford separately settled the respective claims.

Evanston insures Wexford, and its policies list the County as an "additional insured" for claims arising from administrative negligence (as opposed to professional negligence). (*See* Order on Summ. J. at 4, Dkt. #46.) Evanston brought suit seeking a declaratory judgment that Tran's claims were professional in nature (as opposed to administrative), and thus, the policies did not cover Tran's claims against the County. *Id.* at 1. The Court found otherwise. Some of Tran's claims were administrative in nature, and Evanston therefore had a duty to defend and indemnify the County. *Id.* at 8 (holding that Evanston had a duty to defend and indemnify "with respect to [Tran's] allegations that address broad policies dealing with issues of organization and operational procedures").

The case proceeded to a bench trial, and the Court found for Clark County in the amount of $52,664. (Minute Entry Order, Dkt. #90.) The Court requested that the parties address *Olympic Steamship* fees (i.e., attorney's fees incurred by the County in forcing Evanston to abide its duty to defend and indemnify) in post-judgment briefing. *See Olympic Steamship Co., Inc. v. Centennial Ins. Co.*, 117 Wash. 2d 37, 52 (1991) (recognizing right of an insured to "recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim"). At that juncture—after the Court's determination of liability and damages, but before final judgment—the parties began exchanging emails in a settlement negotiation. Whether these emails created a binding settlement is the pertinent question.

The negotiations appear to have begun on April 17, 2012, when counsel for Evanston offered to pay the Court's judgment ($52,674) plus $25,025 in attorney's fees. (*See* Decl. of Bronson Potter, Ex. A, Dkt. #95.) The County responded with an offer to settle for $100,000. *Id.*, Ex. B. The parties apparently discussed the settlement by phone, and on April 19th, the County wrote an email seeking confirmation of the terms of the agreement:

>I am writing this email to confirm and document the settlement agreement we reached today.  Evanston will pay to Clark County the sum of $90,164.00 which equals the $52,664 awarded by the court plus $37,500 for attorney's fees and costs. Payment will be made within 10 days of receipt of Clark County's tax identification information. Upon receipt of payment, the parties will file a stipulated motion and order of dismissal. Either party may recover attorney's fees for enforcement of the settlement agreement, in the event of a breach. Please reply with a confirmation that the foregoing accurately represents the parties' agreement.

*Id.*, Ex. C.  Evanston responded:

>Your email accurately reflects the parties' agreement. Please send tax ID and payee information at your earliest convenience. I'm going to send an email to the clerk this morning requesting judgment not be entered as the parties have reached an agreement in principle.

*Id.*, Ex. D.  The parties then notified the Court that "Evanston and Clark County have reached an agreement in principle on all issues in this case, including attorney's fees, and intend to move to dismiss all claims in this matter with prejudice in the next ten business days." *Id.*, Ex. E. The happiness was short-lived.

On April 25th, Evanston emailed the County a formal settlement agreement, which included a mutual release of all claims between Evanston and the County—stating nothing about Wexford.  *Id.*, Ex. H at 3 ("the Parties," defined as Evanston and the County, "hereby release and forever discharge each other from any and all claims").  The County objected, viewing the release as unnecessary (because the claims were to be dismissed with prejudice). *Id.*, Ex. I ("I don't believe a release is necessary nor was it agreed to.").  Evanston responded that there was a "miscommunication" and that the phrase "agreement in principle" meant that "there would be a release memorializing the terms of the agreement." *Id.*, Ex. J.  On May 1st, following a telephone discussion between counsel, the County emailed Evanston and agreed to sign the release "as drafted."  *Id.*, Ex. L.  The County's email, however, notes that in their discussion, Evanston was now seeking a release of any claims the County might have against its insured—Wexford.  *Id.*  (Wexford had contractually agreed to indemnify the County, and if the County brings suit and recovers against Wexford, it would potentially be Evanston footing the bill.)

In short, the County wants to enforce the settlement terms and apparently pursue claims against Wexford.  Evanston presents two basic arguments in opposition: (1) the Court should

ORDER - 3

read an implied release into the agreement because the question of whether Wexford must indemnify the County was settled in this case; and, (2) the phrase "agreement in principle" indicates that the agreement was contingent pending the release, and thus, there was "no meeting of the minds" sufficient to create an enforceable contract.

## II.   DISCUSSION

Trial courts may "summarily enforce . . . a settlement agreement entered into by the litigants" while the litigation is pending. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). But, enforcement may be inappropriate "where material facts concerning the existence or terms of a settlement were in dispute." *Id.* (citing *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)). In determining whether to enforce a settlement, a court applies local contract law—here, Washington's. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

Washington follows "the objective manifestation theory of contracts," where a court "attempt[s] to determine the parties' intent by focusing on the objective manifestation of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 504 (2005). Washington follows the "context rule," whereby extrinsic evidence may be used "to determine the meaning of *specific words and terms used*" but not to "show an intention independent of the instrument" or to "vary, contradict, or modify the written word." *Id.* (emphasis in original). Further, a contract is binding "when the intention of the parties is plain and the terms of the contract are agreed upon even if one or both parties contemplated later execution of a writing." *Kruger v. Credit Int'l Corp.*, No. 10-cv-1374, 2012 WL 1534023, at *2 (W.D. Wash. Apr. 30, 2012) (citing *Veith v. Xterra Wetsuits, LLC*, 144 Wash. App. 362, 366 (2008)).

Here, the Court must conclude that the settlement agreement between the parties was binding on April 20th, when counsel for Evanston responded: "Your email accurately reflects the parties' agreement." (Potter Decl., Ex. D.) Although Evanston's counsel stated that she would notify the Court of "an agreement in principle," there is nothing to suggest that a release of a potential County claim against Wexford had crossed either party's mind. Indeed, Evanston's draft release, sent five days after the acceptance, does not include any such release.

ORDER - 4

*Id.*, Ex. H. Rather, the emails demonstrate that a potential release of claims against Wexford first occurred to Evanston on May 1st.

Given these facts, the Court sees no need to resolve what Evanston meant by "agreement in principle." At the time of acceptance, neither party had considered a release of claims against Wexford, and therefore, any reservations meant by the phrase "in principle" cannot have included such a release. The objective manifestations, supported by extrinsic evidence, lead to one conclusion: the settlement agreement was final and included no release of potential claims against Wexford. Evanston's briefing appears to concede as much.

In a sort of implied concession, Evanston's brief ignores contract law almost entirely. It argues that the Court should create a release of claims against Wexford for expediency. In short, Evanston argues that by allowing the County to pursue claims against Wexford (by failing to create a release in the settlement agreement), the Court will allow the County to re-try issues already decided in this suit. "[The Court's ruling], an unequivocal finding that Clark County paid nothing to Tran on Wexford's behalf, should extinguish any further attempt by the County to prove Wexford still owes it a duty to indemnify . . . ." (Pl.'s Resp. at 4.) But this argument is appropriate in a future motion to dismiss from Wexford, not in opposing enforcement of the settlement agreement.[1]

---

[1] Evanston correctly notes that their argument "is not, strictly speaking, a matter of *res judicata*," but indicates they view it as closely related. (Pl.'s Resp. at 4.) The ruling could have a collateral estoppel effect—preventing the re-litigation of an issue previously decided. *See* 18 Charles A. Wright et al., *Federal Practice & Procedure* § 4416 (2d ed. 2012). Indeed, this Court determined at trial, and stated on the record, that the amounts paid by the County to Tran's family and estate were for the County's own conduct and not that of Wexford, and as such, the Court sees no avenue for indemnity. (*See* Pl.'s Resp. at 4 (citing the Court's statements at trial)). But, that issue is separate from the question of whether the settlement agreement is enforceable.

### III.   CONCLUSION

In light of this dispute, the Court cautions the parties with the following truism:



This is not a criticism of counsel, but simply a gentle reminder not to hurtle down the x-axis with undue disregard for the y-axis.  The Court worries that the slope of this case appears to be steepening, and hopefully the parties have taken notice.

For the reasons stated above, Clark County's motion to compel is **GRANTED**.  (Dkt. #94.)  Pursuant to the parties' settlement agreement, the Court awards Clark County $3,850 in attorney's fees for the costs of this motion.  (*See* Potter Decl. ¶ 6, Dkt. #102.)

Dated this 8th day of June, 2012.

Ronald B. Leighton
United States District Judge